IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **INTEGRATED WATER SERVICES, INC.,** <br><br> **PLAINTIFF** <br><br> V. <br><br> **PAMPA INVESTMENT GROUP LP,** <br><br> **DEFENDANT** | **CIVIL ACTION NO. 23-475** |

## INTEGRATED WATER SERVICES, INC.'S
## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Integrated Water Services, Inc. ("**IWS**" or "**Plaintiff**") files this Complaint for Declaratory Relief and Damages ("Complaint") against Pampa Investment Group LP ("**Pampa**" or "**Defendant**"). In support of its Complaint, IWS states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332. As set forth in paragraph 4, Plaintiff, Integrated Water Services, Inc., is a citizen of the state of Colorado. As stated in paragraph 5, on information and belief, no partner in the limited partnership of Pampa Investment Group LP is a citizen of Colorado. Therefore, complete diversity exists between the Plaintiff and Defendant.

2. The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs. Thus, the required diversity jurisdictional amount in controversy is satisfied.

3. Venue is proper in this judicial district pursuant to 28 U.S. Code § 1391(b)(1) and (2) because Defendant resides in this judicial district, a substantial part of the events or omissions

#101453030v1                                                         1

giving rise to Plaintiff's claims occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

## PARTIES

4. Plaintiff, Integrated Water Services, Inc., is a corporation organized under the laws of Colorado and authorized to do business in Texas. IWS's principal office address is at 4001 North Valley Drive, Longmont, Colorado 80504. For diversity jurisdiction purposes, IWS is a citizen of Colorado.

5. Defendant Pampa Investment Group LP is a limited partnership organized under the laws of Texas with its principal office address at 8455 Lyndon Lane, Austin, Texas 78729. Tejas Housing V1, Inc. is Pampa's General Partner and is a corporation organized under the laws of Texas with its principal office address at 15 Lake Drive, Round Rock, Texas 78665. On information and belief, for diversity jurisdiction purposes, no partner of Pampa is a citizen of Colorado.

6. Pampa may be served with process by serving its registered agent, R.J. Collins, 8455 Lyndon Lane, Austin, Texas 78729.

## FACTUAL BACKGROUND

7. IWS is a design-builder exclusively dedicated to design, permitting, and construction of water and wastewater treatment facilities for developers, commercial owners, and public entities in the southwestern and southeastern United States.

8. Pampa is the developer and owner of the Salado Center Development—a development that consists of single-family, multi-family, and commercial units in Salado, Texas. On information and belief, Pampa's General Partner—Tejas Housing V1, Inc. ("**Tejas**") – is a

division of Tejas Housing Group, which is a large developer, owner, and operator of nearly 20 multi-family developments in Texas.

### A. IWS Completed Construction of the Salado Plant, But Pampa Failed to Provide Power, Water, and Wastewater Necessary for System Start-Up

9. Pampa is building a housing and commercial development in Salado, Texas (the "**Salado Center**"). To service the Salado Center, Pampa is also constructing the Salado Center Wastewater Treatment Plant (the "**Salado Plant**").

10. Pampa selected IWS to design, permit, and construct Phase 1 of the Salado Plant to provide 50,000 gallons per day ("gpd") of wastewater treatment (the "**Project**"). Pampa and IWS executed the Agreement Between Owner and Design-Builder on the Basis of a Stipulated Price ("**Contract**") (Ex. 1) for the Phase 1 scope on February 18, 2020. Pampa intends to expand the Salado Plant in two additional phases – Phase 2, which will add 100,000 gpd, and Phase 3, which add another 150,000 gpd, for a combined total of a plant with 300,000 gpd wastewater treatment capacity.

11. Fundamental to IWS's Work[1] is Pampa's obligation to provide sufficient power, water, and wastewater (also referred to as "sewer" or "effluent"). Exhibit B to the Contract states that IWS must have "sufficient electrical power [] available at the site to accommodate the pumps, control panel, and other electrical equipment for the new treatment system." (emphasis added).

---

[1] "Work" is defined in the Contract as: "Work: The entire design and construction or the various separately identifiable parts thereof required to be performed or furnished by Design-Builder under the Contract Documents. Work includes and is the result of performing or furnishing Design Professional Services and Construction required by the Contract Documents and all labor, services, and documentation necessary to produce such Design Professional Services and Construction; furnishing, installing, and incorporating all materials and equipment into such Construction; and related services such as testing, start-up, and commissioning, all as required by the Contract Documents." Contract, Standard General Conditions, Article 1, Definitions & Terminology, Section 1.01, Defined Terms, (54) Work.

Ex. 1, Contract Ex. B, "Assumptions"

> - We have assumed sufficient electrical power will be available at the site to accommodate the pumps, control panel, and other electrical equipment for the new treatment system. No provision was made to bring in a transformer or add to the electrical capacity of the system. Final electrical requirements will be provided following design. All site electrical work to provide electrical services to IWS ATS or Main Disconnect by others.

12.     Exhibit B also makes clear that potable water service and electrical service are the responsibility of Pampa.

Ex. 1, Contract Ex. B, "Assumptions"

> **Exclusions from Construction Scope**
> - Utilities Connections
> - No site Grading or rock removal, connection to Lift Stations by others
> - Force Main from Lift Station #1 to WWTF Influent Screen
> - Force Main from Lift Station #2 to WTTF Influent Screen
> - Force Main from Effluent Pump to reuse distribution system
> - Potable Water service to the WWTF and lift station(s)
> - Electrical service to the WWTF and lift station(s)

13.     As set forth in Exhibit B to the Contract, IWS's Work is divided into: Procure Materials and Equipment, Construct System, System Start-Up, Site Clean-Up and Restoration, Operator Training, and Close Out.

**Ex. 1, Contract Ex. B, Scope of Work**

> Scope of Work
> - Procure materials and equipment
> - Construct System
>   - Mobilization
>   - Construct all concrete pads for WWTP
>   - Equipment anchor system installation
>   - Provide communication software and programming
>   - Provide and construct effluent pumping system to convey effluent (effluent line to discharge point is excluded)
>   - Electrical work for this phase of the treatment system only. Electrical service to IWS provided main disconnect by others.
> - System Start-Up
>   - Coordinate start-up with plant manufacturers' representatives and operations and maintenance provider
> - Site clean-up and restoration
> - Operator training
> - Close Out
>   - O&M manuals
>   - Record Drawings

14. IWS cannot perform System Start-Up, which includes commissioning and start-up of the plant, until sufficient power, water, and wastewater are available. IWS cannot conduct "Operator Training" until System Start-Up is complete.

15. IWS diligently executed its Work on the Project. IWS mobilized to the Project site on September 2, 2020, after IWS was directed to proceed by Pampa. IWS completed construction of Phase 1 on January 11, 2021, more than two (2) months ahead of the Substantial Completion date and more than (3) months ahead of the final completion date under the Contract.[2]

---

[2] Contract, Article 2, Contract Times, Section 2.02 Contract Times: Days, (A): Design-Builder will substantially complete the Construction Work 270 days after the Construction Notice to Proceed; Contract, Article 2, Contract Times, Section 2.02 Contract Times: Days, (B): Design-Builder will have the Work completed and ready for final payment, in accordance with Paragraph 14.06 of the General Conditions, within 300 days after the Construction Notice to Proceed.

16. On January 21, 2021, through its Principal Engineer at the time—Jamie L. Miller, P.E.—IWS submitted to the Texas Commission on Environmental Quality ("**TCEQ**") notice that IWS "completed the construction of the wastewater treatment facility for the Salado Center Wastewater Treatment System, Permit Number WQ0015709001." [Ex. 2]

17. When IWS completed construction on January 11, 2021, however, Pampa still did not have sufficient power,[3] water, or wastewater available to the Salado Plant for System Start-Up. As a result, although IWS had met its contractual obligations for construction, Pampa's failure to satisfy its contractual obligations to provide sufficient power, water, and wastewater prevented IWS from progressing to System Start-Up and Operator Training. Pampa's breach "delay[ed], disrupt[ed], and interfere[ed] with [IWS's] performance and progress of the Work" entitling IWS to relief under the Contract in the form of an extension of time and additional compensation.[4]

18. At the request and direction of Pampa, to mitigate the costs for Pampa's inability to provide sufficient power, water, and wastewater, IWS agreed to demobilize from the construction site and to return when power, water, and wastewater were available. At this time, which was February 2021, Pampa represented to IWS that sufficient power and water would be available by *April 2021*—just two months later. But it took Pampa more than a year to get sufficient power to the Salado Plant. After more than two-and-a-half years, in June 2023, Pampa still did not have water or wastewater available to the Salado Plant.

---

[3] As noted, Pampa was required by the Contract to provide "sufficient electrical power" for IWS to perform System Start-Up and other necessary activities. System Start-Up required a 3-phase power transformer, which Pampa failed to have installed until at least May 2022.

[4] Contract, Standard General Conditions, Article 4 Commencement and Progress of the Work, Section 4.04 Delays in Design-Builder Progress, (A).

19. IWS could not know at the time that Pampa would so substantially fail in its contractual obligations. IWS took Pampa at its word, and demobilized from the construction site with the agreement that IWS would remobilize in April 2021 to compete the System Start-up and Operator Training.

20. After demobilizing, IWS returned to the construction site on April 9, 2021 to install a wastewater pump at the onsite office building at Pampa's request. This work was in addition to IWS's original scope and the parties executed Change Order 2 to the Contract for this additional work. As of April 2021, Pampa still did not have sufficient power, water, or wastewater at the Salado Plant necessary for System Start-Up and Operator Training.

21. Pampa finally arranged for sufficient power to the Salado Plant in May 2022 (more than a year late). Once again, IWS returned to the Salado Plant at Pampa's request and direction and conducted a test of the generator start-up. At this time, Pampa was attempting a work around to its water and wastewater availability problems that involved drawing water and wastewater from a nearby church. Pampa again requested that IWS perform additional work to tie-in the Salado Plant to the church water and sewer lines.

22. IWS and Pampa negotiated Change Order 4 to the Contract for this tie-in work in the Fall of 2022. IWS ordered the tie-in equipment and materials, which took several months to procure due to long lead times with vendors, and received the equipment and materials in February 2023.

23. IWS remobilized to the Salado Plant in March 2023 and installed the check valves and water and sewer connection to the nearby church. Pampa's tie-in to the nearby church, however, did not allow IWS to progress the System Start-Up or Operator Training because the wastewater from the church was a fraction of what would be needed to commission and start the

Salado Plant. Further, Pampa still did not have the necessary water meter installed for water service and therefore still did not have water at the Salado Plant.

24. On March 17, 2023, IWS inspected the Salado Plant to generate a "punch list." "Punch list" is not a defined term in the Contract, but as Section 14.03 Substantial Completion demonstrates, punch list work is work that is left to be completed after Substantial Completion:

**Ex. 1, Contract, Standard General Conditions, Section 14.03 (emphasis added)**

*After Substantial Completion the Design-Builder shall promptly begin work on the punch list of items* to be completed or corrected prior to final payment. In appropriate cases Design-Builder may submit monthly Applications for Payment for completed punch list items, following the progress payment procedures set forth above.

25. Having been led to believe that Pampa would finally have sufficient power, water, and wastewater for System Start-Up by the week of May 29, 2023 (which never actually happened), IWS inspected the Salado Plant on March 17, 2023 to determine what punch list work would remain for completion after System Start-Up in May 2023.

26. On March 31, 2023, IWS and Pampa held an in-person meeting to discuss the punch list items identified by IWS on March 17, 2023. IWS provided the March 17 punch list to Pampa at the meeting, and Pampa agreed to the March 17, 2023 punch list items during that same meeting. IWS performed work on the punch list in April and May 2023.

27. IWS later formalized the punch list into an excel spreadsheet on or about May 14, 2023. By May 14, 2023, IWS had completed all items on the punch list except 12 items that would be completed *after* System Start-Up, which was noted in the punch list by the indication that the target completion was the week of May 29, 2023 ("Target completion date 5/29"). In April and May 2023, IWS performed work at the Salado Plant in preparation for the expected System Start-Up at the end of May 2023.

28. Then, on May 16, 2023, Pampa admitted that it would not have wastewater sufficient for System Start-Up until *December 2023.* On May 16, 2023, IWS noted the "2.5 year hiatus" caused by Pampa and asked Pampa to "confirm that we are starting up the plant starting the week of May 29[, 2023]." In response, Pampa advised IWS, "the schedule for commissioning of the system has been pushed and we now don't expect the plant to begin taking waste until the end of this year."

29. By not providing sufficient water and wastewater, Pampa prevented IWS from advancing from completed construction to System Start-Up and Operator Training. Pampa suspended IWS's work in January 2021 for over two years because Pampa did not have sufficient power at the Project site. IWS's Work remains suspended by Pampa because IWS cannot proceed to System Start-Up or Operator Training without water and wastewater. In total, Pampa suspended IWS's work for nearly 850 days as of the date of this Complaint with another 150 days of suspension expected because Pampa cannot fulfill its obligation to provide water and/or wastewater for System Start-Up and Operator Training until December 2023.

30. Pursuant to the terms of the Contract, IWS is entitled to terminate the Contract and to be paid for all completed and accepted work, expenses incurred prior to the termination, fair and reasonable overhead, settlement of all terminated contracts, and reasonable expenses attributable to the termination. [Contract, General Conditions, Article 15.04 (A) and incorporated damages under Article 15.03 (A)] On June 29, 2023, IWS sent Pampa Notice under Article 15.04 (A) of Owner Suspension Greater Than 90 Days. [Ex. 3]

31. Pursuant to the terms of the Contract, IWS is entitled to a day-for-day extension of time and an increase in contract compensation for Pampa's extensive and unreasonable delay of nearly 1,000 days under Section 4.04 (A).

32. Despite the fact that Pampa suspended and unreasonably delayed, disrupted, and interfered with IWS's performance of the Work for the past 850 days in violation of the parties' Contract, on June 14, 2023, Pampa's lawyer sent a letter to IWS (1) demanding that IWS not communicate with Pampa or any of its representatives, (2) claiming that IWS would have to pay Pampa liquidated damages in excess of $405,000 for delay that is solely and completely the result of Pampa's suspension and delay of the Work, and, as discussed below, (3) threatening IWS with criminal charges for IWS's request to retrieve certain leased equipment for which Pampa refused to pay IWS. [Ex. 4]

33. In the June 14, 2023 letter, Pampa further asserts that IWS is responsible for work that is not part of any Contract Document, was not agreed to by IWS, was not included in Contract Price, and has not been authorized by Change Order. The Contract was based on a specific set of design drawings and specifications reviewed and approved by Pampa. Now, more than three years later, Pampa is attempting to leverage its own suspension and delay to add scope to IWS's Contract without payment. Specifically, these extra scope items include a secondary flow measurement device, shade covers, and other modifications to systems that were not included in the Contract drawings and specifications.

34. As a result of Pampa's actions, IWS has incurred more than $124,000 in damages that include, but are not limited to, all costs of the repeated demobilization and remobilization to the Salado Plant over the past two-and-a-half years and the costs for the additional work that was required as a result of the extensive, unreasonable suspension and delay by Pampa, as well as all other costs and damages incurred by IWS as a result of Pampa's breach of the Contract. Further, Pampa still owes IWS remaining payments under the Contract, including payment for Change Order 3 and 4.

### B.  Pampa's Conversion of IWS Property

35.  As part of the Work, IWS and Pampa executed Change Order 3 on December 31, 2020. [Ex. 5] Under Change Order 3, among other things, IWS agreed to lease to Pampa EQ tank, pumps, and blowers and WAS tank, pumps, and blower ("**Leased Equipment**") for Pampa's use until Pampa could construct Phase 2 of Salado Plant. The Leased Equipment was intended to provide Pampa with an initial 60,000 gpd capacity of EQ, sludge holding, and auxiliary pumping that would be needed to run Phase 1 of the Salado Plant. After Phase 2 construction, the Salado Plant would have permanent replacements for Leased Equipment with larger capacity. Once Phase 2 was constructed, IWS would retrieve its Leased Equipment, which would no longer be needed.

36.  With the execution of Change Order 3, Pampa was charged the first 24 months lease costs for the Leased Equipment—December 2020 through December 2022. After that first 24 months, the Change Order provides that Pampa will pay IWS $1,800 per month for the Leased Equipment. It has been more than six (6) months and Pampa has refused to make any further payment for the Leased Equipment.

37.  On May 31, 2023, IWS corresponded with Pampa on a number of disputed issues. One of those issues was Pampa's failure to pay for the Leased Equipment. Given Pampa's suspension of the Work for the past 850 days (with an additional 150 days for wastewater to go) and Pampa's failure to pay the costs for the Leased Equipment, IWS offered to sell the Leased Equipment to Pampa for the list price and write off the six (6) months of lease fees. If Pampa did not want to purchase the Leased Equipment, IWS advised Pampa that IWS needed to come and retrieve the Leased Equipment.

38.  In response, Pampa refused to make **any** payment to IWS for the Leased Equipment despite the six-month delinquency. Pampa used Pampa's suspension and extensive delay to IWS's

Work to claim that because the Leased Equipment could not be used—which, again, is solely because Pampa does not have water or wastewater at the Salado Plant—Pampa should be entitled to hold IWS's equipment —valued at $175,000—indefinitely without payment.  Pampa refused to pay IWS for the Leased Equipment, refused to return IWS's Leased Equipment, refused to provide IWS access to the Project site to retrieve the Leased Equipment, and threatened criminal charges against IWS (trespass and theft) for IWS's request to retrieve its Leased Equipment that Pampa had not paid for.  [Ex. 4]

39. As a result, IWS has incurred damages that include, but are not limited to, the full market value of $175,000 for the Leased Equipment for Pampa's conversion of the equipment, the depreciation in the market value of the Leased Equipment, damage to the Leased Equipment as a result of Pampa's possession without reasonable and necessary use or maintenance, and/or unpaid lease fees as well as all other costs and damages incurred.

## CONDITIONS PRECEDENT

40. All conditions precedent to IWS' right to recover in this action have been performed, have occurred, have been waived by Defendant, are void/unenforceable under Texas law, or are otherwise excused or futile.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

41. IWS incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

42. IWS and Pampa entered into the Contract, which is a valid, enforceable contract governing the Project.

43. IWS, as the design-builder under the Contract in privity with Pampa, is the proper party to bring suit for Pampa's breach(es) of the Contract.

44. IWS fully performed its contractual obligations under the Contract.

45. Pampa breached the Contract when Pampa did not have sufficient power, water, and wastewater available for System Start-Up in January 2021 when IWS completed construction.

46. Pampa breached the Contract when Pampa failed to provide sufficient power, water, and wastewater for a period of time that exceeded 90 days.

47. Pampa breached the Contract when Pampa delayed, disrupted, and interfered with IWS's performance and progress of the Work.

48. Pampa breached the Contract when Pampa refused to pay for the leased Equipment and converted the Leased Equipment to itself.

49. As a result of Pampa's breaches, IWS has incurred more than $124,000 in damages that include, but are not limited to, all costs of the repeated demobilization and remobilization to the Salado Plant over the past two-and-a-half years and the costs for the additional work that was required as a result of the extensive, unreasonable suspension and delay by Pampa, as well as all other costs and damages incurred by IWS as a result of Pampa's breach of the Contract. Further, Pampa still owes IWS remaining payments under the Contract, including payment for Change Order 3 and 4.

## COUNT II: DECLARATORY RELIEF

50. IWS incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51. There is an actual, substantial case or controversy between IWS and Pampa who have adverse legal interests of sufficient immediacy and reality. Pursuant to 28 U.S.C. § 2201,

#101453030v1                                               13

2202 and Federal Rule of Civil Procedure 57, IWS seeks a declaration of its rights and liabilities under the Contract to settle the legal relations between IWS and Pampa and to provide IWS relief from uncertainty, insecurity, and controversy.

52. IWS is entitled to a declaration that Pampa suspended IWS's Work on January 11, 2021 when IWS completed construction but Pampa did not have sufficient power, water, or wastewater available as the Salado Plant.

53. Alternatively, IWS is entitled to a declaration that Pampa caused delay, disruption, and interference with IWS's Work preventing IWS from System Start-Up necessary for Substantial Completion and that IWS is entitled to an extension of time and compensation under the Contract until Pampa provides sufficient power, water, and wastewater for System Start-Up.

54. IWS is entitled to a declaration that Pampa is not entitled to any liquidated damages from IWS under the Contract either because Pampa suspended IWS's work for greater than 90 days or because Pampa is the cause of delay to IWS reaching Substantial Completion.

55. IWS is entitled to a declaration that the secondary flow measurement device, shade covers, and other modifications to the systems not in the Contract design drawings and specifications are not part of IWS's Contract scope of work.

56. IWS is entitled to a declaration that IWS's obligations under § 14.08 Correction Period of the Contract Standard General Conditions began to run on the 91st day after Pampa suspended IWS's Work because Pampa did not have sufficient power, water, or wastewater at the Salado Plant; and that IWS's warranty obligations ended one year after the expiration of 90 days from the start of Pampa's suspension of IWS's Work.

57.     IWS is entitled to a declaration that Pampa's warranties for the Work are limited solely to the remaining equipment and supplier's manufacturer warranty periods still in effect, if any.

## COUNT III: CONVERSION

58.     IWS incorporates by reference all preceding paragraphs of this Petition as if fully set forth herein.

59.     From January 2023 to the present, IWS was and still is the owner of the Leased Equipment. IWS had the right of immediate possession of the Leased Equipment because Pampa failed and/or refused to make lease payments for over six (6) months.

60.     On June 14, 2023, Pampa unlawfully and without authority assumed dominion and control over the Leased Equipment that it refused to pay for. Pampa acted to the exclusion of IWS's rights to its personal property in that Pampa denied IWS access to the site of the Project to retrieve IWS's Leased Equipment and Pampa refused to pay for the Leased Equipment. Pampa deprived IWS of IWS's free use and enjoyment of the Leased Equipment.

61.     IWS requested Pampa grant IWS access to the Project site and return the Leased Equipment to IWS, but Pampa refused to grant IWS the access necessary to return the Leased Equipment to IWS and continued to exercise dominion and control over the Leased Equipment without authority.

62.     Pampa's refusal to return the Leased Equipment to IWS proximately caused IWS to incur damages in the amount of the actual market value of $175,000 for the Leased Equipment for Pampa's conversion of the equipment, the depreciation in the market value of the Leased Equipment, damage to the Leased Equipment as a result of Pampa's possession without reasonable

and necessary use or maintenance, and/or unpaid lease fees as well as all other costs and damages incurred.

## REQUEST FOR ATTORNEYS' FEES

As a result of Pampa's breaches of the Contract, IWS was forced to retain counsel and pursue relief in this Court. IWS is entitled to recover its attorneys' fees and court costs under §SC-16.03 of the Contract; Texas Civil Practice and Remedies Code Chapter 37 and 28 U.S.C. 2202; and Texas Civil Practice and Remedies Code Chapter 38.

## PRAYER FOR RELIEF

IWS requests the Court enter a judgment in its favor and against Pampa, awarding damages and declaratory judgment and all other relief to which IWS is entitled in law and equity as set forth in this Complaint.

Dated:  June 29, 2023

Respectfully submitted,

**JONES WALKER, LLP**

*/s/  Tiffany C. Raush*
**TIFFANY C. RAUSH**
Texas Bar No. 24099090
811 Main Street, Suite 2900
Houston, Texas 77002
Tel:     713.437.1800
Fax:     713.437.1917
Email: traush@joneswalker.com

*Attorneys for Integrated Water Services, Inc.*